UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

DAWN K. BENTLEY

Defendant.

_____/

Case: 2:16-cr-20432
Judge: Michelson, Laurie J.
MJ: Patti, Anthony P.
Filed: 06-16-2016 At 03:49 PM
IND SEALED V SEALED (BG)

VIO:  18 U.S.C. § 1349
18 U.S.C. § 981
18 U.S.C. § 982

## **INDICTMENT**

THE GRAND JURY CHARGES:

## **General Allegations**

At all times relevant to this Indictment:

### **The Medicare Program**

1.     The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

1

3.      The Medicare program included coverage under two primary components—hospital insurance (Part A) and medical insurance (Part B). Part B provided coverage for, among other things, certain physician office and home visits, and other health care benefits, items, and services. The physician services at issue in this Indictment were covered by Part B.

4.      Wisconsin Physician Service ("WPS") was the CMS contracted carrier for Medicare Part B in the State of Michigan. TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the State of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC ("Cahaba"). On or about April 10, 2015, AdvanceMed replaced Cahaba as the Program Safeguard Contractor.

5.      Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to a beneficiary. This occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

6.      Health care providers could only submit claims to Medicare for medically necessary services they rendered. Medicare regulations required health care providers to maintain complete and accurate patient medical records to verify that the services were provided as described in the claim. These records were

required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

7.     Under Medicare Part B, physician office visit services were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury.  Individuals providing these services were required to have the appropriate training, qualifications, and licenses to provide such services. Providers were required to:  (1) document the medical necessity of these services; (2) document the date the service was performed; (3) identify the provider who performed the service; and (4) identify the clinic, physician office, or group practice where the provider provided the service.     Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers. To be reimbursed from Medicare for physician office visit services, the services had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare.  Providers were required to maintain patient records to verify that the services were provided as represented on the claim form to Medicare.

8.     To receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form containing the required information appropriately identifying the provider, patient, and services rendered.

3

9.     The Michigan Medicaid program ("Medicaid") was a federal and state funded program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including Michigan. Individuals who received benefits under the Medicaid program were similarly referred to as "beneficiaries."

10.    Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

11.    Medicaid covered the costs of medical services and products ranging from routine preventative medical care for children to institutional care for the elderly and disabled. Among the specific medical services and products provided by Medicaid were reimbursements to physicians for medical services. Generally, Medicaid covered these costs, if among other requirements, they were medically necessary and actually rendered.

12.    To receive reimbursement from Medicaid, medical service providers submitted or caused the submission of claims, either electronically or in writing, to Medicaid for payment of services, either directly or through a billing company.

**The Defendant, Relevant Entities, and Relevant Individuals**

13.     Physician's Medical Billing Service, LLC ("PMBS") was a Michigan corporation located at 3546 North Quarry Creek Dr., White Lake, MI 48383. PMBS specialized in credentialing and medical billing for physicians in Southeast Michigan.

14.     Waseem Alam, M.D., P.C., was a Michigan corporation located at 43344 Woodward Avenue, Bloomfield Hills, Michigan 48302. Waseem Alam, M.D., P.C., was enrolled as a Medicare and Medicaid provider and PMBS submitted claims to Medicare and Medicaid on behalf of Waseem Alam, M.D., P.C.

15.     Woodward Urgent Care PLLC ("Woodward Urgent Care") was a Michigan company doing business at 43344 Woodward Avenue, Bloomfield Hills, Michigan 48302. Woodward Urgent Care was a Medicare and Medicaid provider and PMBS submitted claims to Medicare and Medicaid on behalf of Woodward Urgent Care.

16.     Defendant DAWN K. BENTLEY, a resident of Oakland County, Michigan, was the owner and registered agent of PMBS. BENTLEY, through PMBS, was contracted with Waseem Alam, M.D., P.C. and Woodward Urgent Care.

17.     WASEEM ALAM, M.D. ("W.A."), a resident of Oakland County, Michigan, was a licensed physician in Michigan who was enrolled as a

5

participating provider with Medicare. W.A., owned and controlled Waseem Alam, M.D., P.C., and Woodward Urgent Care, and purported to provide care to patients of Waseem Alam, M.D., P.C., and Woodward Urgent Care.

## COUNT ONE
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

18.     Paragraphs 1 through 13 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

19.     From in or around June 2014 until June 2015, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, and elsewhere, the defendant, DAWN K. BENTLEY, and others known and unknown to the Grand Jury, did willfully and knowingly combine, conspire, confederate, and agree to commit certain offenses against the United States, that is:

(a) to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control

of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

(b) to violate Title 18, United States Code, Section 1343, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

## Purpose of the Conspiracy

20.      It was a purpose of the conspiracy for BENTLEY and others to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare and Medicaid through PMBS for physician office visits and other services that were (i) medically unnecessary; (ii) not provided; and/or (iii) not eligible for reimbursement; (b) concealing the submission of false and fraudulent claims to Medicare and Medicaid for physician services; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendant and her co-conspirators in the form of compensation and other remuneration.

**Manner and Means**

The manner and means by which DAWN K. BENTLEY and her co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

21.     DAWN K. BENTLEY, through PMBS, would contract with W.A. to provide credentialing and medical billing services to him.

22.     BENTLEY would operate and control the day-to-day operations at PMBS.

23.     BENTLEY would obtain Medicare and Medicaid provider credentialing for W.A's entities, Waseem Alam, M.D., P.C., and Woodward Urgent Care.

24.     BENTLEY, through the use of interstate wires, would submit and cause the submission of false and fraudulent claims for services purportedly provided by Waseem Alam, M.D., P.C. and Woodward Urgent Care that were not provided as billed.

25.     BENTLEY, through the use of interstate wires, caused false and fraudulent claims to be submitted to Medicare and Medicaid for services purportedly provided by and Waseem Alam, M.D., P.C. and Woodward Urgent Care.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;
18 U.S.C. § 982(a)(7)—Criminal Forfeiture)

26.     The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

27.     As a result of the violations of Title 18, United States Code, Sections 1349, in this Indictment, DAWN K. BENTLEY, shall forfeit to the United States any property, real or personal, that constitutes or is derived from any proceeds obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 982(a)(7) and 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461.

28.     Substitute Assets:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of the defendant up to the value of the forfeitable property described above.

Respectfully submitted,

THIS IS A TRUE BILL.

BARBARA L. McQUADE
*United States Attorney*

s/Grand Jury Foreperson
Grand Jury Foreperson

s/Shubhra Shivpuri
SHUBHRA SHIVPURI
THOMAS TYNAN
*Trial Attorneys*
*U.S. Department of Justice*
*Criminal Division, Fraud Section*

s/ALLAN J. MEDINA
ALLAN J. MEDINA
*Assistant Chief*
*U.S. Department of Justice*
*Criminal Division, Fraud Section*

s/WAYNE F. PRATT
WAYNE F. PRATT
*Chief, Health Care Fraud Unit*
*United States Attorney's Office*
*Eastern District of Michigan*

Dated: June 16, 2016

ORIGINAL

Case: 2:16-cr-20432
Judge: Michelson, Laurie J.
MJ: Patti, Anthony P.
Filed: 06-16-2016 At 03:49 PM
IND SEALED V SEALED (BG)

| **United States District Court** **Eastern District of Michigan** | **Criminal Case Cover** | |
|---|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

## **Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008    [ ]

| **Companion Case Information** | **Companion Case Number:** 15-20351 |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** Judge Sean Cox |
| ☒ Yes    ☒ No | **AUSA's Initials:** SS |

**Case Title:** USA v. Dawn Bentley

**County where offense occurred :** Oakland County

**Check One:**    ☒ **Felony**      ☐ **Misdemeanor**      ☐ **Petty**

   ✓ Indictment/____ Information --- **no** prior complaint.
   ____ Indictment/____ Information --- based upon prior complaint [Case number:        ]
   ____ Indictment/____ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## **Superseding Case Information**

**Superseding to Case No:** _____      **Judge:** _____

   ☐ Original case was terminated; no additional charges or defendants.
   ☐ Corrects errors; no additional charges or defendants.
   ☐ Involves, for plea purposes, different charges or adds counts.
   ☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

6/16/2016
Date

*Shubhra Shivpuri*
Shubhra Shivpuri
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice
211 West Fort Street, Suite 2001
Detroit, MI 48226
(202) 279-1348
Shubhra.Shivpuri@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.      04/13